GENERAL ACCIDENT FIRE AND LIFE ASSURANCE CORPORATION, Ltd., Appellant,

v.

A. D. COFFMAN, Appellee.

No. 3637.

Court of Civil Appeals of Texas. Waco.

June 18, 1959.

Rehearing Denied July 16, 1959.

Bryan & Patton, Houston, for appellant.

Combs & Mitchell, Houston, for appellee.

TIREY, Justice.

This is a compensation case. Appellee, plaintiff in the court below, alleged that on July 25, 1957, while working in the scope of his employment for The Austin Company, he received an injury to his back while carrying a barrel of water. Appellee's claim was submitted to the Industrial Accident Board, and on December 24, 1957, that Board made an award. Plaintiff was dissatisfied with the award and appealed to the District Court of Fort Bend County. Trial was had in that Court and the jury returned a verdict favorable to the plaintiff, and among other things found that he was totally and permanently disabled. The judgment recites that plaintiff is entitled to judgment against defendant for Workmen's Compensation benefits at the rate of $25 for a period of 401 weeks, commencing from the date of the injury, July 25, 1957; that compensation payments from July 25, 1957, to May 17, 1958, have accrued, and fixed the amount past due at $1,036.25, with interest; that plaintiff is entitled to compensation for the remaining period of 360 weeks and 1 day at the rate of $25 per week, and found that such payment shall be made in a lump sum, allowing a discount of 4% per annum, and fixed the total amount due appellee at $8,914.87, and set aside the award of the Industrial Accident Board, and decreed accordingly. Appellant seasonably filed its motion for new trial and it being overruled perfected its appeal to the Houston Court, and the cause is here on transfer.

The judgment is assailed on six points, they are substantially to the effect that the Court erred: 1. In excluding the testimony of Dr. DeYoung as to the beneficial effect an operation would have on plaintiff; 2. In instructions given to the jury at a time the jury returned conflicting answers to their verdict; 3. In excluding from the jury evidence of the earnings of plaintiff's wife and evidence of the amount of money plaintiff obtained from a previous compensation settlement where the question of hardship in connection with lump sum payment of the award was presented as a fact issue to the jury; 4. In holding that the defendant was not entitled to a new trial because of jury misconduct where it was shown that one of the jurors intentionally failed to disclose a previous back injury and where it was shown that the juror was influenced by his own condition; 5. In failing to declare a mistrial because of the improper arguments made by plaintiff's counsel, and in further failing to grant a new trial because the cumulative effect of such improper arguments probably caused the rendition of an improper verdict; 6. That the accumulation of errors make it probable that injury resulted

to the defendant, even though no single error of itself is a basis for reversal.

Returning to Point One, testimony was tendered by plaintiff's witness, Dr. De-Young, to the effect that he first saw plaintiff September 26, 1957; that plaintiff was complaining of his back, and that he examined him thoroughly for such ailment; that he sent the patient to a radiologist, and that x-rays revealed moderate hypertrophic changes in the back, and no other abnormalities; that Dr. DeYoung saw plaintiff again on Oct. 28, 1957, and again on December 20, 1957, and at that time Dr. DeYoung was of the view that plaintiff had only a back sprain; that on February 22, 1958, plaintiff was again examined by Dr. De-Young, and sent to Dr. Owsley for a myelogram. Thereafter, Dr. DeYoung concluded for the first time that plaintiff had a herniated lumbar disc. At that time plaintiff's case had been heard by the Industrial Accident Board, and it had entered its final award, and plaintiff had perfected appeal to the District Court of Fort Bend County, and trial was commenced in that court on May 5, 1958. Dr. DeYoung further testified to the effect that in his opinion plaintiff had a ruptured intervertrebal disc, and that it was produced by the injury of July 25; that the condition of the herniated disc as it exists at this time was permanent and that plaintiff was totally disabled. On cross-examination the defendant was denied the right to develop evidence to the effect that the plaintiff would benefit by surgery. In the bill of exceptions it was shown that Dr. DeYoung, on April 17, 1958, for the first time requested authority to perform corrective surgery; that Dr. DeYoung proposed to carry out a laminectomy and spinal fusion; that he thought such an operation would probably result in six months disability and two months partial disability, with a permanent disability of about 20%; that such disability, after the operation, should not prevent the plaintiff from performing hard labor; that the operation was not dangerous.

It is appellant's contention here that the Court committed reversible error in excluding evidence tendered by it of the beneficial effect of the operation because it prevented the defendant from proving that the condition of the plaintiff was not incurable, and if given the opportunity he could be restored to sound physical condition. Appellant relies on an opinion by our Fifth Circuit Court in National Surety Corporation v. Bellah, 245 F.2d 936. Appellant also contends that the question here presented has never been decided directly by an appellate court of Texas. Appellee contends that the question has been foreclosed by the Texas Courts against appellant's contention, and cites Texas Emp. Ins. Ass'n v. Kubiak, Tex.Civ.App., 276 S.W. 2d 909, (n.r.e.); American General Ins. Co. v. Quinn, Tex.Civ.App., 277 S.W.2d 223, (n.r.e.). We find that in the Kubiak and Quinn cases each involved injuries which resulted in a herniated disc; that the jury found total and permanent disability. The insurance carrier in each case did not admit but denied liability and did not tender curative surgery until after the appeal in each case was perfected from the Industrial Accident Board to the District Court. As we understand the record in the Kubiak and Quinn cases, the Texarkana Court expressly found in each cause that the insurance carrier did not comply with Section 12b and Sec. 12e of Article 8306 of Vernon's Ann.Civ.St. That Court expressly held that inasmuch as the carrier did not comply with Sec. 12b and Sec. 12e and denied liability on each claim, that the carrier was not entitled to plead nor prove the possible curative benefits of a surgical operation; the appellee contends that inasmuch as our Supreme Court refused application for writ of error in each case on the ground that there was no reversible error, that such order of the Supreme Court has definitely fixed the Rule in Texas, and that this Court should follow it, and not follow our Circuit Court in the Bellah case. Appellee also cites and relies on an opinion by our Fifth Circuit Court in Wilke v. Security National Casualty Co., 262 F.

2d 419. We have carefully considered the opinion in the Wilke case. The writer of the opinion in such case expressly holds that the Bellah case is not in point and not controlling in the Wilke case, however, we cannot say that the Wilke case is in accord with the holding in the Kubiak and Quinn cases. As we understand the Bellah case, our Fifth Circuit Court had exactly the same procedural question before it as in the Kubiak and Quinn cases as is presented by appellant's point 1 here as to the exclusion of the evidence showing the benefit of curative surgery. In the Bellah case, the Court, among other things, said: "But when it comes to the procedural point of the exclusion of medical testimony, we think the trial court, applying too literally two Texas cases, each of which cited two of ours, fell, or was pulled, into error." [245 F.2d 940.] In view of the holding in the Bellah case we have had the Clerk of the Supreme Court mail to us a copy of the application for writ of error in the Kubiak and Quinn cases, and we have carefully reviewed them and find that the exact question in the Bellah case was presented in each of these applications for writ of error. In each application the point was so clearly pointed up to our Supreme Court that we are of the view that it would have granted the writ if it had not been of the view that the action of the Court of Civil Appeals thereon was a correct construction and application of our compensation statute. This Court, speaking through Justice Hale in American Surety Co. of New York v. Mays, Tex.Civ.App., 157 S.W.2d 444, 446, (Writ Ref. for want of Merit), made this pronouncement: "It is now settled that each step in the progress of the maturity of a claim under the Workmen's Compensation Act, Vernon's Ann. Civ.St. art. 8306 et seq., from the time of the injury to its final adjudication is a mandatory requirement necessary to the exercise of jurisdiction by the first and succeeding statutory agencies. * * * Section 12e of the same Article provides for a surgical operation in all claims for general injury when such operation will effect a cure of the employee or will materially and beneficially improve his condition, subject to the terms therein set forth, and 'the results of such operation, the question as to whether the injured employé shall be required to submit thereto and the benefits and liabilities arising therefrom shall attach, be treated, handled and determined by the board in the same way as is provided in the case of hernia in this law.' "

It is true that the appellant in the case at bar did not know that surgery would be of benefit to the plaintiff until after the Board had acted upon plaintiff's claim, and after plaintiff had perfected his appeal from such award to the District Court, and had, in effect, ousted the Industrial Accident Board of all jurisdiction relating to his claim. As we understand the holding of our Texarkana Court in the Kubiak and Quinn cases, it is to the effect that if the carrier desires to take advantage of curative surgery it must admit liability and tender such curative surgery while the claim is pending before the Industrial Accident Board. Since our Supreme Court refused to take jurisdiction of these cases and denied the applications for writ on the grounds that there was no reversible error, we feel that the holding by the Texarkana Court under such circumstances is binding upon us and we must follow such rule and not the rule announced by the Fifth Circuit Court in the Bellah case. Since this Court is bound by the decisions of our Supreme Court in the construction and in the application of our statutory law as well as our common law, we must follow it and for that reason we make no further comment on the Bellah case.

Appellant's Point 3 is to the effect that the Court committed reversible error in excluding from the jury evidence of the earnings of plaintiff's wife and evidence of the amount of money plaintiff obtained from a previous compensation settlement where the question of hardship in connection with lump sum payment of the award

was presented as a fact issue to the jury. It is true that the trial judge has wide discretion in admitting or excluding testimony relating to lump sum settlement. 45 Tex. Jur.P.P. 682. The record shows that appellant tendered testimony to the effect that plaintiff's wife did some day work part time for 50¢ per hour, and that plaintiff had received a $1,000 settlement for a knee injury some years before after being disabled for a period of some eight months. On this point the Court permitted the plaintiff to tender testimony to the effect that he owed Federal Housing Administration $325.92, the Hermann Hospital $73.50, Love's Food Market $15, Schultze's Radio and Appliance $112.97, and that he had other debts. He also testified that he had not worked any since the accident. Plaintiff admitted on cross-examination that his wife had worked, but the trial court refused to admit testimony as to the amount of her earnings, and also that he had received $1,000 for his knee injury. Since the earnings of the wife are community property, Art. 4619, we think such testimony was admissible, since the lump sum settlement is for the purpose of doing as near as possible equity for the employee it follows that more than ordinary latitude should be granted in the investigation of the issue in order to determine whether manifest hardship and injustices will result to an employee if compensation is not paid in a lump sum. Traders & General Ins. Co. v. Ross, Tex.Civ.App., 88 S.W.2d 543, and cases there cited; also Texas Employers' Ins. Ass'n v. Clack, Tex.Civ.App., 112 S.W. 2d 526, affirmed 134 Tex. 151, 132 S.W.2d 399; also Texas Employers' Ins. Ass'n v. Long, Tex.Civ.App., 180 S.W.2d 629. (Writ Ref. W.M.) Appellant, in his brief, made this statement: * * * "The fact that plaintiff had received the sum of $1,-000 less than two years before would likewise have given the jury an entirely different picture of the hardship of plaintiff. Such evidence would also have presented facts for consideration by the jury as regards the plaintiff's ability to handle a lump sum. In other words, knowing that the plaintiff had received a $1,000 not too long before and during that time had been employed but had spent the thousand dollars received and was now in debt again was certainly a circumstance to be considered. The jury could well have concluded that under such circumstances the plaintiff was not capable of handling any large sum of money and it could therefore have concluded that it would have been to the best advantage of the plaintiff to receive the money in weekly installments." We are in accord with this view.

Appellant's Fourth Point is to the effect that the Court erred in not granting it a new trial because of jury misconduct, it being shown that one of the jurors intentionally failed to disclose a previous back injury, and because it was shown that the juror was influenced by his own condition. This requires a statement. The juror, Robert Long, during the voir dire examination of the jury panel failed to disclose to the Court and the attorney that he had previously suffered a back injury for which he was treated some two or three months, and which injury still bothered him. On Motion for new trial juror, Long, stated in effect that he knew he had been asked about his own injury, but failed to disclose it, for the reason that he had forgotten the exact date he received this back injury. On the motion for new trial he further testified to the effect:

"Q. And the fact that you had a back injury like that one time did have a bearing on how you felt about whether he should get some money or not? Is that right? A. Sure. That's right. Shovel work will get you.

"Q. Do you feel like he would not be able to do too much work or laboring work? A. Not like he always did.

"Q. You felt like he would not be able to, judging from your own experience, with a back injury? A. Yes, that's right.

"Q. You felt like you had some special knowledge of what a back injury was

because you had one? A. Yes, that's right.

"Q. And that influenced your decision as to whether or not Coffman should be awarded some compensation or some money or not? A. Yes, it sure did, because if a man's back is injured, he can't do any hard work."

Appellant's attorney testified to the effect that had he known that juror, Long, had suffered a previous back injury he would not have taken him on the jury. Long did not tell any of the other jurors about his previous injury. It is appellee's position that it is never permissible to allow a juror to preserve or destroy his verdict by testifying to the mental processes by which he reached his verdict. Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462; Putman v. Lazarus, 156 Tex. 154, 293 S.W.2d 493; Trousdale v. T. & N. O. R. Co., 154 Tex. 231, 276 S.W.2d 242. In addition thereto, since the juror, Long, was a 65 year old colored man, and that he had received his back injury some eight or ten years before the trial, that he had an opportunity to hire a lawyer, but didn't because he was treated fairly by the insurer, and because he had been working regular since his injury; that he had never seen the plaintiff, Coffman, prior to the trial, and that Long had not been back to see a doctor since he was released to go back to work, and that Long was a rather passive member of the jury and did not in any way discuss his injury in the jury room, and did not take a very active part in the deliberations of the jury; and for the foregoing reasons appellee contends that this situation brings him within the provisions of Rules 327, 434, and 504, Texas Rules of Civil Procedure, and more particularly under Rule announced by our Supreme Court in Childers v. Texas Employers' Ins. Ass'n, 154 Tex. 88, 273 S.W.2d 587. We cannot agree with this contention because of the undisputed factual situation relating to the juror, Long. We are of the view that this undisputed factual situation distinguishes this cause from the Rule applied by our

Supreme Court in the Childers case, supra, as well as the Rule applied by the Houston Court in Thompson v. Quarles, Tex.Civ. App., 297 S.W.2d 321, (n. r. e.), and Houston Belt & Terminal Ry. Co. v. Burmester, Tex.Civ.App., 309 S.W.2d 271, (n. r. e.). Surely the appellant had the right to know of each member of the jury panel whether or not he or she had sustained at any time a back injury in order that he might properly exercise his challenges for the benefit of his client. It is obvious that no one could reasonably speculate as to the effect on the ultimate outcome of this cause had the appellant had an unbiased juror sitting in the place of the juror, Long. Appellant was entitled to have its cause submitted to twelve men who were fair and unbiased by previous experience and its attorney's effort to obtain such treatment for his client was denied through no fault of the attorney. We are of the view under this undisputed factual situation that no heavy burden or unreasonable burden should be placed upon defendant to show probable harm. In the case of Consolidated Gas & Equipment Co. of America v. Carver, 10 Cir., 257 F.2d 111, 115, in a similar situation that Court made the following pronouncement: "Whether so intended or not, the effect of the silence of the juror was to deceive and mislead the court and the litigants in respect to his competency. And such deception and misleading had the effect of nullifying the right of peremptory challenge as completely as though the court had wrongfully denied such right. In view of the possibility and even probability that the juror would be subject in some degree to the extraneous influence of his own injury and the pendency of his own action, he was not a competent juror. Since he was not a competent juror, the jury with his membership thereon was not a properly constituted tribunal. * * * True, the verdict was unanimous but that did not immunize it from attack upon the ground that the particular juror was not competent. The integrity of the verdict depended upon there being twelve competent jurors, not eleven." Citing United States v. Chapman,

10 Cir., 158 F.2d 417, certiorari denied. The foregoing Rule is clear—it is just and equitable, and we think such Rule has been applied substantially by our Texas Courts. See Texas Electric Railway Co. v. Wooten, Tex.Civ.App., 173 S.W.2d 463 (Ref. Want Merit); Moore v. Ivey, Tex.Com.App., 277 S.W. 106 (N.W.H.); Cloudt v. Hutcherson, Tex.Civ.App., 175 S.W.2d 643 (Ref. Want Merit); 257 F.2d 111, aforesaid. We are of the view that the foregoing error requires reversal of this cause.

Point Five is to the effect that the Court erred in failing to declare a mistrial because of the many improper arguments made by plaintiff's counsel, and further in failing to grant a new trial because the cumulative effect of the several improper arguments probably caused the rendition of an improper verdict. Due to the fact that we think this cause must be reversed and remanded for the errors we have heretofore discussed, we have decided not to discuss in detail the arguments complained of because of the fact that many of the arguments were stricken by the Court on objections and the others may not arise on another trial. We think the rule announced by our Supreme Court in Smerke v. Office Equipment Company, 138 Tex. 236, 158 S.W.2d 302, is still the rule in Texas. See Southern Pacific Co. v. Hubbard, 156 Tex. 525, 297 S.W.2d 120. As to the burden of complaint to show probable prejudice, see Mrs. Baird's Bread Company v. Hearn, Tex., 300 S.W.2d 646. If we be mistaken in holding that the errors discussed, each in themselves, is sufficient to require reversal, then and in that event we think the accumulation of the foregoing errors make it probable that injury resulted to the defendant even though it may be held that such errors standing alone is not a basis for reversal.

We have given much consideration to appellant's point two and we are of the view that it does not present reversible error, and it is overruled. We think we should say that inasmuch as we feel that the cause must be reversed and remanded on other grounds that it would serve no useful purpose to discuss at length appellant's point two, because the error there complained of in all probability will not arise on another trial.

Accordingly, this cause is reversed and remanded.